In re VILLAGE IMPORT ENTERPRIS-
ES, INC., d/b/a VIP Mitsubishi,
Debtor.

Bankruptcy No. 1–89–03914.

United States Bankruptcy Court,
E.D. Tennessee, S.D.

March 22, 1991.

Richard Korsakov, Cohen & Korsakov, Chattanooga, Tenn., for Textron Financial Corp.

Scott N. Brown, Jr., Brown, Dobson, Burnette, & Kesler, Chattanooga, Tenn., Trustee.

Arthur C. Grisham, Jr., Grisham & Knight, Chattanooga, Tenn., for Chrysler Credit Corp.

## MEMORANDUM

RALPH H. KELLEY, Chief Judge.

Textron Financial Corporation leased business equipment to the debtor, Village Import Enterprises. The debtor has made adequate protection payments to Textron so that it could keep and use the equipment. But now the debtor has ceased operating, a bankruptcy trustee has been appointed, and no one is making the adequate protection payments. Textron has filed a motion asking the court to lift the automatic stay of Bankruptcy Code § 362 so that it can retake the equipment. 11 *U.S.C.A.* § 362(a) (West 1979 & Supp.1990).

The motion has been briefed and heard, and this memorandum is the court's findings of fact and conclusions of law.

Bankr.Rules 7052 & 9014 (West 1984 & Supp.1990).

The trustee and Chrysler Credit Corporation oppose Textron's motion. Chrysler Credit opposes the motion because it also claims a security interest in the equipment. The trustee and Chrysler Credit argue that the lease is a sale in disguise, and though it made the debtor the owner of the equipment, it failed to give Textron a security interest.

The argument raises two questions. Does Textron have a security interest in the equipment, and is it perfected? Both questions are governed by the Uniform Commercial Code, the UCC. However, Tennessee's version of the UCC may not apply to both questions.

The question of perfection will be decided under the Tennessee's UCC because the equipment is located in Tennessee. *Tenn. Code Ann.* § 47–9–103(1)(b) (Bobbs–Merrill Supp.1990).

The question of whether the lease is a true lease or a secured sale contract may be governed by Tennessee law or Rhode Island law. The lease provides that it will be interpreted under Rhode Island law.

Before the 1986 amendments to Tennessee's UCC, the choice of Rhode Island law probably could not have been enforced. Section 9–102 made Article 9 of Tennessee's UCC apply to any transaction intended to create a security interest in personal property *located in Tennessee.* Section 1–105 allowed the parties to agree on the controlling law but made the parties' agreement yield to the rule in § 9–102. *Tenn. Code Ann.* § 47–1–105 & § 47–9–102 (Bobbs–Merrill 1979).

The 1986 amendment to § 9–102 took out the choice of law rule by dropping the description of personal property as located in Tennessee. *See* J. White & R. Summers, *Handbook of the Law under the Uniform Commercial Code* 895 (2d ed. 1980). Though § 1–105 still refers to § 9–102, it cannot override the parties' choice of law agreement under § 1–105. *Tenn. Code Ann.* § 47–9–102 (Bobbs–Merrill Supp. 1990). Section 1–105 controls, and under it

the question is whether the transaction has a reasonable relation to Rhode Island.

Having said all this, the court need not decide which law to apply. The court reaches the same conclusion under the law of either Tennessee or Rhode Island.

A secured sale can easily be cast in the terms of a lease. The seller or financer becomes the lessor, the buyer becomes the lessee, and the purchase price or the loan (plus interest) becomes the rent. In light of this problem, the drafters of the UCC provided some rules for deciding whether a lease is a true lease or a secured sale disguised as a lease. The UCC calls a lease that is really a secured sale contract a "lease intended as security." *Tenn. Code Ann.* § 47–1–201(37) (Bobbs–Merrill Supp. 1990); *R.I. Gen.Laws* § 6A–1–201(37).

The general rule requires a court to consider all the facts to determine whether a lease is intended as security. However, the statute goes on to say a lease is intended as security if the lessee has the option at the end of the lease to become the owner for a "nominal" payment.

■ This lease gives the debtor the right to buy the equipment at the end of the lease for the nominal consideration of one dollar. Textron itself has argued that the lease is a lease intended as security. Therefore, the court concludes that the lease from Textron to the debtor is a lease intended as security. *In re Ram Mfg., Inc.*, 45 B.R. 663, 40 UCC Rep. 1050 (Bankr.E.D.Pa.1985); *Barick Furniture Corp. v. Monzack (In re Fritsche)*, 36 B.R. 844 (Bankr.D.R.I.1984).

The trustee argues that the lease still does not give Textron a security interest because it contains only lease terms and no words granting or creating a security interest.

■ The court disagrees. The rules for determining whether a lease is intended as security are in the definition of security interest. The rules focus on the practical effect of the lease, not its wording. The drafters of the UCC obviously expected a lease intended as security to use only lease terms. They did not expect the parties to

disguise a secured sale as a lease and then give away the disguise by including words granting the lessor a security interest. The federal district court made this point in *In re Walter W. Willis, Inc.*, 313 F.Supp. 1274, 7 UCC Rep. 1125 (N.D.Ohio 1970), *aff'd per curiam* 440 F.2d 995, 8 UCC Rep. 1330 (6th Cir.1971).

The court has found only two cases that come close to disagreeing, but neither really does. *Sight & Sound of Ohio, Inc. v. Wright,* 36 B.R. 885, 39 UCC Rep. 990 (S.D.Ohio 1983); *Barick Furniture Corp. v. Monzack (In re Fritsche), supra.*

In the Ohio case, the district court agreed with the earlier district court decision in *In re Walter W. Willis, Inc.*, but distinguished it on the facts. The distinguishing facts are not present in this case.

The *Barick* case from Rhode Island involved a strange contract that called itself a lease but used sale terms instead of lease terms. It added to the confusion by including an option to purchase but without any amount in the blank space for the option price. Judge Votolato treated the option as basically meaningless. He held that the lease was a sale contract that failed to reserve a security interest for the seller. He said that the UCC's rules for distinguishing true leases from leases intended as security did not even apply.

The statutes give another reason for rejecting the trustee's argument. Article 9 of the UCC applies to any transaction "regardless of its form" that is intended to create a security interest in personal property. *Tenn.Code Ann.,* § 47–9–102(1)(a) (Michie Supp.1990); *R.I.Gen.Laws* § 6A–9–102(1)(a).

The agreement creating a security interest can be in any form—sale, consignment, lease, bailment—or whatever the parties can imagine. The agreement need not say that it is granting a security interest. The practical effect of the agreement determines whether it was intended to create a security interest. *Consumer Lease Network, Inc. v. Puckett,* 60 B.R. 223, 3 UCC Rep.2d 734, note 6 (Bankr.M.D.Tenn.1986); *Coble Systems, Inc. v. Coors of the Cumberland, Inc.,* 19 B.R. 313, 34 UCC Rep.

241 (Bankr.M.D.Tenn.1982); *Woonsocket Tire Sales, Inc. v. Dowling (In re Rite-Cap, Inc.),* 7 B.R. 113, 30 UCC Rep. 740 (Bankr.D.R.I.1980); *Caslowitz v. Ocean State Video Group, Inc.,* 32 UCC Rep. 969 (R.I.Super.1981).

The court concludes that the lease gave Textron a security interest in the equipment. The next question is whether Textron perfected the security interest.

■ Textron filed a financing statement. The following statement is typed in the space for a description of the collateral:

The collateral is the equipment described on the attached Lease Agreement between the Debtor as Lessee and Secured Party as Lessor, whether now owned or hereafter acquired, and proceeds thereof, including proceeds in the form of goods, accounts, chattel paper, documents, instruments and contract rights. The attached Lease Agreement is being filed in lieu of a financing statement pursuant to the Uniform Commercial Code.

Following this is the handwritten note, "True lease does not require recordation tax."

The financing statement reveals some confusion by Textron over whether it was the holder of a security interest or the lessor under a true lease. For the purpose of deciding whether to pay the recordation tax, Textron apparently chose to be a true lessor and not liable for the tax.

■ By filing a financing statement, the lessor of goods does not admit that the lease is intended as security. The financing statement can even include language denying that the lease creates a security interest. The financing statement still perfects the security interest by giving notice of the lessor's interest. *In re Winston Mills, Inc.,* 6 B.R. 587 (Bankr.S.D.N.Y. 1980) (applying Tennessee law); *Industrial Leasing Corp. v. Sabetta (In re Lockwood),* 16 UCC Rep. 195 (Bankr.D.Conn. 1974).

Therefore, Textron's financing statement perfected its security interest—unless the apparent failure to pay the recordation tax

**310**

prevents the financing statement from being effective.

A Tennessee tax statute provides that failure to pay the tax shall not prevent the financing statement from being effective. It imposes monetary penalties for failure to pay the tax instead of penalizing the creditor treating the security interest as unperfected. *Tenn.Code Ann.* § 67–4–409(b)(10) (Michie 1989). Section 9–403(1) of the UCC was amended to agree with this statute. *Tenn.Code Ann.* § 47–9–403(1) (Bobbs–Merrill 1990).

The Tennessee legislature clearly meant to make a filed financing statement effective without regard to whether the correct amount of recordation tax was paid. Therefore, the court concludes that Textron's security interest was perfected when the financing statement was filed.

As a result, the bankruptcy trustee cannot avoid the security interest under Bankruptcy Code § 544 and UCC § 9–301. 11 *U.S.C.A.* § 544(a)(1) & (2) (West 1979); *Tenn.Code Ann.*, § 47–9–301(1)(b) (Bobbs–Merrill Supp.1990). Textron's claim is secured, and it is entitled to adequate protection or relief from the automatic stay. Since no adequate protection has been proposed, the court will enter an order lifting the stay.