**In the Matter of EAGLE ENTER-PRISES, INC., and Liberty Recovery Systems, Inc.**

CIV. A. No. 98–4749.
Bankruptcy Nos. 98–11297, 98–11298.

United States District Court,
E.D. Pennsylvania,
Philadelphia Division.

Aug. 16, 1999.

Mark E. Felger, Cozen and O'Connor, Philadelphia, PA, for appellee.

Stephen M. Calder, Palmer, Biezup & Henderson, Philadelphia, PA, J. Stephen Simms, Greber and Simms, Baltimore, MD, for appellants.

Edward J. Di Donato, Di Donato and Winterhalter, Philadelphia, PA, for trustee.

Mitchell W. Miller, Philadelphia, PA, Chapter 7 Trustee.

Daniel K. Austin, Philadelphia, PA, trustee.

### MEMORANDUM

WALDMAN, District Judge.

### I. *Introduction*

This is an appeal from a final order of the United States Bankruptcy Court. Appellant United Container Services (Deutschland) GmbH essentially argues that the Bankruptcy Court erred in applying Pennsylvania law in determining that certain contracts between it and the debtors styled as "purchase lease agreements" were in fact disguised sales and not true leases. Appellant contends that those agreements contained choice of law provisions indicating that they would be governed by German law which would treat the agreements as true leases.

### II. *Standard of Review*

This court has appellate jurisdiction over final orders of the bankruptcy court pursuant to 28 U.S.C. § 158(a)(1) and reviews *de novo* the bankruptcy court's conclusions of law. *In re Ben Franklin Hotel Associates*, 186 F.3d 301, 304 (3d Cir.1999); *In re Equipment Leassors of Pennsylvania*, 235 B.R. 361, 363 (E.D.Pa.1999). The bankruptcy court's findings of fact are reviewed for clear error. *Id.; Fed. R. Bankr.P. 8013.*

### III. *Factual Background*

Appellant acknowledges the accuracy of the facts as found by the bankruptcy court. In pertinent part, they are as follow.

Prior to filing for bankruptcy protection, the debtors, Eagle Enterprises, Inc. and Liberty Recovery Systems, Inc., were engaged in waste management. Their case originally proceeded under Chapter 11 of the Bankruptcy Code, but was thereafter converted to a Chapter 7 proceeding. Appellee Mitchell Miller was appointed trustee in bankruptcy. At the time the case was converted to Chapter 7, the debtors possessed three machines called hydraulic top-lifters. All three top-lifters were located in the United States. Two of the top-lifters, both inoperable, were located in a facility in Philadelphia. The third top-lifter, which was operable, was located in Virginia and was used in clean-up operations at the debtors' premises by USA Waste Services, Inc., a secured creditor.

The debtors had acquired the top-lifters from appellant during the year preceding their bankruptcy filing pursuant to agreements entitled "Purchase Lease Agreement[s]." Under the agreements, the leases were to last for 36 months and required the debtors to make quarterly payments of slightly more than $16,000 per quarter per top-lifter. The leases could not be terminated prior to the end of the

36–month term. The leases included a purchase option under which the debtors could acquire ownership of the top-lifters in exchange for one dollar per top-lifter.

Appellant filed two motions before the bankruptcy court. The first sought the rejection of the leases and the return of the top-lifters. The second sought compensation from USA Waste for its use of the functioning top-lifter during the post-petition period. The bankruptcy court denied both motions. *See In re Eagle Enterprises, Inc.*, 223 B.R. 290 (Bankr.E.D.Pa. 1998). This appeal followed.

Appellant argued in the bankruptcy court that it and the debtors "chose German law to control their leases" through a choice-of-law provision specifying that "the Laws of Germany" would govern "all matters including the validity, construction and performance" of the lease agreements. Based on an affidavit from a German lawyer, the bankruptcy court accepted that under pertinent German law title to the top-loaders would not pass until the end of the lease term. Appellee apparently did not dispute this conclusion in the bankruptcy court, and in any event neither party raises the issue on appeal.

The bankruptcy court held that even though Pennsylvania's choice of law rules generally permit contracting parties to specify that their contract is to be construed according to the laws of a foreign jurisdiction, such choice-of-law provisions do not bind persons, such as a trustee in bankruptcy, who were not parties to the contract and who never agreed to be bound by its terms. The bankruptcy court also found that Pennsylvania law specifically overrides contractual choice-of-law provisions when they apply to the perfection of security interests in transactions with multi-state contacts. *See* 13 Pa. C.S.A. §§ 1105 & 9103. The bankruptcy court found that the contracts between appellant and the debtors left appellant with a security interest, specifically a purchase money security interest, as defined by 13 Pa.C.S.A. §§ 1201 & 9107, in the

top-lifters because the contracts required that the "lessee ... pay the lessor for the right to possession and use of the goods [and was] not subject to termination by the lessee and ... [gave] the lessee ... an option to become the owner of the goods for no additional consideration or nominal consideration upon compliance with the lease agreement."

The bankruptcy court held that appellant was required to file a financing statement to perfect its security interest and that its failure to do so left it with an unperfected and unsecured interest subordinate to that of the trustee in bankruptcy, who occupies the position of judicial lien creditor. Accordingly, the bankruptcy court held that appellant had no right to performance that might be due and owing under an unassumed executory contract, no right to have the contract rejected by operation of law or otherwise and no right to demand or collect any form of adequate protection payments since appellant had "no continuing interest in the top-lifters."

## IV. *Discussion*

■ In bankruptcy cases, the nature and extent of property interests held by debtors and creditors normally is a matter of state law. *Fisher v. Apostolou*, 155 F.3d 876, 880 (7th Cir.1998); *American Bankers Ins. Co. of Florida v. Maness*, 101 F.3d 358, 363 363 (4th Cir.1996); *In re Amdura Corp.*, 167 B.R. 640 (D.Colo.1994), *aff'd*, 75 F.3d 1447 (10th Cir.1996). Appellant does not challenge the bankruptcy court's conclusion that Pennsylvania law determines whether the purchase lease agreements' choice of German law should be given effect for bankruptcy purposes. In its brief, appellant in fact assumes the applicability of Pennsylvania law. In any event, the applicable pertinent state laws are Uniform Commercial Code provisions which were enacted in identical form by the legislatures of Pennsylvania and Virginia, the state in which the functioning top-lifter was located and the only other United States jurisdiction with any discernable

interest in the application of its laws to this case.

Appellant maintains that the "Bankruptcy Court's fundamental concerns for third parties does not apply here" because "it can never properly apply in the situation of a true lease." Appellant argues that the bankruptcy court's holding gives creditors who never examine a debtor's lease "license to in good faith extend debt assuming that the debtor owns the property" and that taken "to its logical conclusion," the bankruptcy court's opinion "encourages creditors to bet whether property is owned or leased and after bankruptcy try to remake the lessor's and debtor's lease agreement" and requires lessors to conclude that they must always file UCC financial statements to perfect security interests in leased property "even when they and their lessee never intended for their lease to convey title or be anything other than a true lease." Appellant reasons that the bankruptcy court's holding "encourages a lack of due diligence on the part of creditors and potential creditors" because it "would allow any creditor, or bankruptcy trustee asserting creditor's interests, to attack any lease transaction that the parties intended *never* convey title to the lessee-debtor." (Emphasis in original.) This argument, in support of which appellant cites no authority, is unavailing.

It is one thing for a creditor or trustee to "attack [a] lease transaction" in bankruptcy proceedings. It is another thing to do so successfully. Appellant ignores the reason for the trustee's success. Under any governing law, when parties enter into a "lease agreement" for a fixed term which cannot be terminated, and which offers the "lessee" an "option to purchase" the equipment at the end of the "lease term" for the token consideration of one dollar, the "lessor" quite clearly contemplates passing title to the "lessee." In the absence of any explanation for how the top-lifters, for which the parties agreed a reasonable 36–month rental payment was about $200,000 per machine, could come to have negative economic value, it is impossible to imagine that appellant ever contemplated getting the top-lifters back. As long as the top-lifters at the end of the lease term would have any economic value—even for salvage purposes—no rational party would ever decline to exercise an "option" to "purchase" them for one dollar.

■ Appellant and the debtors clearly contemplated that appellant would part with all interest in the top-lifters in exchange for periodic payments totaling approximately $200,000 per machine, and that at the end of the "lease term" appellant would own no interest in the top-lifters. That the "lease agreements" called for a token payment of one dollar per top-lifter to cause title formally to pass to the debtors at the end of the "lease" term does not alter the substance of their transaction. That appellants and the debtors agreed that German law would govern disputes between them does not prejudice the rights under United States bankruptcy law of appellee, who never agreed to the choice-of-law provision.

Had the debtors never filed for bankruptcy, a potential creditor who reviewed the "lease agreements" reasonably would have concluded that the top-lifters were valuable collateral, since in exchange for specified periodic payments they gave the debtors use and possession of the top-lifters for 36 months and the right thereafter (even under German law) thereafter to terminate any interest appellant had in the machines in exchange for one dollar apiece.

Under appellant's theory, sellers of business equipment could routinely characterize sales transactions as leases or select the law of a jurisdiction which would so treat them, although they have an option to purchase for token consideration at the end of the lease term and, even without filing a financing statement, would be able to assert a claim to the equipment superior to that of the trustee if the "lessee" declares bankruptcy. This would completely undermine the Uniform Commercial Code

requirement that holders of purchase money security interests in business equipment file financing statements to perfect their security interests, the purpose of which is to provide potential creditors with notice that another party in fact owns an interest in a potential debtor's business equipment. *See General Electric Credit Corp. v. Nardulli & Sons, Inc.*, 836 F.2d 184, 190 (3d Cir.1988); *In re Brace*, 163 B.R. 274, 278 (Bankr.W.D.Pa.1994).

Appellant's theory would also substantially undermine the bankruptcy process, one of the overriding principles of which is that authorizing a single bankruptcy trustee to represent the interest of the creditors as a class is vastly superior to allowing a feeding frenzy of creditors, each rushing in to lay claims to a bankrupt estate's assets to the detriment of others. *See Matter of Hoskins*, 102 F.3d 311, 316 (7th Cir.1996) (purpose of bankruptcy law is to prevent creditors from engaging in mutually destructive feeding frenzy). *See also, e.g., In re Reliance Equities, Inc.*, 966 F.2d 1338, 1344 & n. 6 (10th Cir.1992) (pertinent provisions of U.C.C. and federal Bankruptcy Code share goal of protecting creditors from unfiled, unrecorded or secret liens).

■ Whether or not appellant or the debtors "ever had any intent to mislead any third party about the nature" of their transactions or whether "any party relied on some claim of 'ownership'" by the debtors is besides the point. The trustee owed "a complex set of obligations and fiduciary duties" to the bankruptcy court, the debtor "and, most importantly, the creditors." *Gower v. Farmer's Home Administration (In re Davis)*, 899 F.2d 1136, 1143 n. 15 (11th Cir.), *reh'g denied*, 908 F.2d 980 (11th Cir.), *cert. denied*, 498 U.S. 981, 111 S.Ct. 510, 112 L.Ed.2d 522 (1990); *In re Lloyd Securities, Inc.*, 1992 WL 236162, *12 (Bankr.E.D.Pa.1992), *approved and adopted*, 153 B.R. 677 (E.D.Pa.1993). Among them was the duty to attempt to marshal for the benefit of the creditors as a class all assets properly included in the bankruptcy estate. *See, e.g., In re Drexel Burnham Lambert Group, Inc.*, 123 B.R. 702, 708 (Bankr.S.D.N.Y.1991). *See also In re IRFM, Inc.*, 65 F.3d 778, 780 (9th Cir.1995) (unlike Chapter 11 trustee, goal of Chapter 7 trustee is liquidation of bankrupt estate at maximum value), *cert. denied sub nom. Mosier v. Kroger Co.*, 517 U.S. 1220, 116 S.Ct. 1848, 134 L.Ed.2d 949 (1996).

Appellant does not argue that the inclusion of the top-lifters in the bankruptcy estate was incorrect as a matter of federal bankruptcy law. *See Fisher v. Apostolou*, 155 F.3d 876, 880 (7th Cir.1998) (nature of debtor's interest in property is matter of state law but whether the resulting interest should count as "property of the estate" for bankruptcy purposes is issue of federal law). Appellant's arguments that "no third parties are involved" in this case and that "no creditor was hurt" besides appellant, and their implication that no other creditor's interests would be hurt by reversing the bankruptcy court, are simply incorrect. Appellant has an interest in recovering as much as it can from the debtors through the bankruptcy process. So do the other creditors. Allowing one creditor to "jump the line" ahead of others necessarily injures the other creditors, regardless of whether any of them had extended the debtors credit on the assumption that title to the top-lifters had passed formally to the debtors.

The bankruptcy court also rejected appellant's argument that the 1972 revisions to the Uniform Commercial Code, which the Pennsylvania legislature enacted, required the bankruptcy court to give effect to the provision that German law would govern interpretation of the contracts and that under German law the contracts were "true leases."

Appellant correctly notes that the commentary to the 1972 amendments states that "[i]n general, problems of choice of law in [Article 9] as to the validity of security agreements are governed by Section 1–105." 13 Pa.C.S.A. § 9102, cmt. 3.

Section 1–105, however, provides that parties may generally "agree that the law either of this Commonwealth or [another] state or nation shall govern *their rights and duties.*" 13 Pa.C.S.A. § 1105(a) (emphasis added). It does not provide that parties may bind persons who never agreed to that choice. Moreover, § 1–105(b) expressly provides that § 9–103 (relating to perfection provisions of division on secured transactions) trumps contracting parties' ability to select another law. 13 Pa.C.S.A. § 1105(b).

Section 9–103 provides, in pertinent part, that "perfection and the effect of perfection or nonperfection of a security interest in collateral are governed by the law of the jurisdiction where the collateral is when the last event occurs on which is based the assertion that the security interest is perfected or unperfected." 13 Pa.C.S.A. § 9103(2). This effectively creates a "modified situs test" in which the law of the jurisdiction where the collateral is located governs. *Phillips v. Ball & Hunt Enterprises, Inc.*, 933 F.Supp. 1290, 1293 (W.D.Va.1996) (applying identical Virginia version of 13 Pa.C.S.A. § 9103(2)).

■ Pennsylvania law expressly provides that a "lease" transaction in which the "lessee" cannot terminate the "lease" during its term but may thereafter become the owner of the "leased" goods for no additional or nominal addition consideration does not create a lease, but rather creates a security interest. *See* 13 Pa.C.S.A. § 1201. Under Pennsylvania law, the type of security interest created by the contracts between appellant and the debtors was a purchase money security interest. *See* 13 Pa.C.S.A. § 9107. The transaction falls into none of the exceptions to the general rule that a financing statement must be filed to perfect all security interests. *See* 13 Pa.C.S.A. § 9302(a). Under Pennsylvania law, the "purchase lease agreements" between appellant and the debtors created a sale of goods with a retained security interest and are textbook examples of when filing a financing state-

ment is required to perfect a security interest, and of when Pennsylvania law disallows the application of other laws selected by the parties which would dispense with the filing requirement.

Appellant's reliance on *In re Boling,* 13 B.R. 39, 42 (Bankr.E.D.Tenn.1981) (applying Tennessee and North Carolina versions of U.C.C.), is misplaced for at least two reasons. First, third party interests are at issue when a trustee in bankruptcy uses the Bankruptcy Code strong-arm provisions to avoid a security interest. Second, the court in *Boling* expressly found that the leasing agreements in that case did not allow the goods to be purchased for nominal consideration after the completion of the lease terms. *See* 13 B.R. at 44. Thus, the agreements in *Boling* did not fall into the Uniform Commercial Code nominal-consideration exception which requires contracts to be treated as a sale of property with a retained security interest rather than a lease, regardless of the parties' decision to call the contract a lease.

Appellant's reliance on *In re Village Import Enterprises, Inc.,* 126 B.R. 307 (Bankr.E.D.Tenn.1991) is also unavailing. To the extent that court concluded that under U.C.C. § 1–105 as it presently exists, pertinent U.C.C. provisions concerning secured transactions cannot trump a contractual provision to apply another jurisdiction's laws, this court cannot agree. *See* Tenn.Code Ann. §§ 47–1–105(2) & 47–9–102(1) (other than as to specific enumerated exceptions, law of state where collateral is located governs any transaction regardless of form intended to create a security interest in goods even when contracting parties have agreed that other forum's law applies); *In re Village Import Enterprises, Inc.,* 126 B.R. at 308 ("The practical effect of the agreement determines whether it was intended to create a security interest.") (citing cases). *See also* 13 Pa.C.S.A. §§ 1105 & 9102 (identical provisions of U.C.C. as enacted by Pennsylvania legislature); *Bonczek v. Pascoe Equipment Co.,* 304 Pa.Super. 11,

450 A.2d 75, 79 (1982) (citing with approval U.C.C. decisions from other jurisdictions holding that lease agreements permitting lessor to become owner of goods at end of lease term for no additional or nominal additional consideration deemed intended to create security agreement as a matter of law).

In any event, the discussion in *Village Import Enterprises* on choice of law was dicta and essentially irrelevant as both Tennessee and Rhode Island, the jurisdiction whose laws the contracting parties agreed would apply, had both adopted substantially identical pertinent Uniform Commercial Code provisions. The Court in *Village Import Enterprises* in fact held that the leasing agreement in that case, which like the ones at issue in the instant appeal, permitted the "lessor" to purchase the goods at the end of a lease term for one dollar, was not a true lease but rather was intended to create a security interest. *In re Village Import Enterprises,* 126 B.R. at 308.

Finally, in a footnote appellant "incorporates by reference" an argument it made in the bankruptcy court that many courts have honored contractual choice of law provisions by which lease agreements were considered true leases. As the bankruptcy court correctly observed, in each of those cases the parties' choice of law was uncontested and the courts simply applied their contractual choice without analysis. Moreover, the cases appellant relies upon apparently involved nonexistent "conflicts" between the laws of different United States jurisdictions each of which had adopted the Uniform Commercial Code, including its rule that a "lease" which the "lessor" cannot terminate but which affords the "lessor" an option to purchase the goods for no additional or nominal additional consideration is considered a sale with a retained security interest.

### V. Conclusion

The bankruptcy court correctly concluded that contracting parties' choice to apply foreign law generally does not bind persons who never agreed to that choice. The bankruptcy court also correctly concluded that when parties agree to apply foreign law by which a contract to "lease" goods kept in Pennsylvania and which does not permit the lessor to terminate the lease but affords the lessor an option to purchase the goods for nominal consideration is deemed a "true lease," and not a disguised sale which requires the seller to file a financing statement to perfect its security interest, Pennsylvania law will not give effect to that choice.

Accordingly, the judgment of the bankruptcy court will be affirmed.